E. ENNALLS BERL AND PAUL L. HART,
Receivers of Lewis Oil Corporation,

*vs.*

THE VIRGINIA PRODUCTION COMPANY, a corporation of the State of Delaware, AND GAINES B. TURNER.

*New Castle, Dec.* 19, 1932.

*Ivan Culbertson,* for complainants.

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, for defendants.

*John Biggs, Jr., amicus curiae.*

THE CHANCELLOR: There was no obligation on the part of the Virginia company to deliver the 1,000,000 shares to the Lewis company under the terms of the contract of August, 1922. Whatever right the Lewis company had to receive the 1,000,000 shares is based solely on Turner's alleged obligation to transfer that amount from the holdings of himself and associates. Notwithstanding Turner was not named by the contract as one of its parties and he did not sign the contract as an individual, signing only as president of the company, he nevertheless admits that he agreed to transfer 1,000,000 shares to the Lewis company. He insists, however, that his contract lay entirely in parol; that it is not evidenced solely, if at all, by the written agreement of August, 1922, between the companies; that a condition precedent to the fulfillment of his obligation was that the Lewis company would perform its agreement, and that there having been a failure to perform on the part of the Lewis company there ceased to be any duty on his part to deliver.

If this were a bill to secure the specific performance

of Turner's alleged contract to deliver the stock, it would be necessary for the court to determine the question of just what the contract between him and the Lewis company was and, if it was conditional as claimed by Turner, to determine further whether the condition precedent had been met by the Lewis company.

But the bill is not one for the specific performance of Turner's contract. The solicitor for the complainants so admits, as indeed he must, on his brief. The bill is one which seeks to compel the defendant company to register the complainants as owners of stock which concededly stood in the name of either Turner or his associates when the contract was made. Turner himself claims to own 1,-000,000 shares. But he testifies that he was to secure from his associates a portion at least of the shares necessary to meet his contract with the Lewis company.

The bill being of the character it is, that is to say, a bill to secure the registration of stock which was standing in the name of Turner, how can the corporation be compelled to register the complainants as owners of that stock unless and until Turner as owner surrendered it for transfer? Plainly it cannot. It cannot be expected to make a registration of the same 1,000,000 shares in the names of two different owners.

If Turner never made a surrender for transfer to Lewis Oil Corporation of the necessary 1,000,000 shares, the certificate which was filled out, if delivered, was unlawfully delivered, and the Lewis company could have no possible right to insist upon being registered as owner of the shares. Its only remedy would be against Turner for specific performance of his contract to transfer the specified shares.

The question arises then, did Turner surrender 1,-000,000 shares to the Virginia company duly endorsed for transfer? The evidence on this highly important point is confined to a very narrow compass. Turner swears posi-

tively that he never surrendered any stock for transfer to the Lewis company. He insists in his testimony that the filling in of the certificate and the forwarding of it to the Lewis company undetached from the stub was on his understanding that its delivery would not be complete until the Lewis company had performed its contract with the Virginia company, and when that fact appeared he would then supply to the latter company the necessary shares to support the new certificate in the name of the Lewis company. Such is his testimony, repeatedly asserted throughout his examination. Yet when the books and records were transmitted to the Lewis company in September, 1922, the accompanying letter from Turner stated that the certificate was not to be detached nor any other delivery made "on account of the revenue stamps." This letter over Turner's name is hardly consistent with the idea that the delivery of the certificate was conditional upon a showing that the Lewis company had performed its contract with the Virginia company. However, it does not necessarily indicate that Turner had surrendered to the Virginia company the stock necessary to support the new certificate. But on one or two occasions statements were made by Turner in writing in which he speaks of having transferred his own stock to the Lewis company as a *fait accompli*—statements which are at variance with his present testimony. In the answer originally filed by him, he stated that he and his associates did deliver to the Lewis company a certificate endorsed in blank for 1,000,000 shares of the Virginia company. That statement finds no support in the evidence anywhere. The answer was amended before the hearing by consent of the complainants so as to remove that statement from it and to substitute therefor a new statement to the effect that what the Lewis company received was (not a certificate from Turner and associates endorsed in blank) but a certificate direct from the Virginia company attached to the certificate book

and delivered under the circumstances before stated. The evidence fully supports the answer in its amended form.

It is unfortunate that the books and records of the Virginia company are not to be had. We are required to rely for information on the question of whether stock was surrendered to the Virginia company as a basis for the new certificate to the Lewes company solely upon Turner, who was the Virginia company's president. While his testimony is quite clear that he never surrendered any stock, yet his statements on one or two occasions appear to be at variance with his sworn testimony. I observed Turner on the stand. While he impressed me as an honest witness, at the same time he impressed me as a man whose language is quite apt to keep poor step with his thoughts. I do not feel justified in allowing to what might have been a careless expression or two of Turner's the weight of overthrowing his positive statements made under oath not only in this court but elsewhere when he was under judicial examination, to the effect that he never supplied any stock to the Virginia company as the basis for the issuance of a million share certificate to the Lewis company.

I accept then Turner's present testimony as correctly depicting the facts. There having been no surrender by him to the Virginia company of 1,000,000 shares for transfer, the complainants are not entitled, as receivers of the Lewis company, to be registered on the books as the owners of the shares, notwithstanding the filling in of the certificate. The complaint, if any they have, is properly against Turner for not surrendering for transfer the shares according to his contract.

I would experience no difficulty under the testimony in this cause in determining whether Turner is now under obligation to transfer the million shares. Turner was made a party defendant on the theory apparently that the mere joining of him would authorize the court to pass fully on the complainant's rights against him as well as

against the corporate defendant. In my opinion, however, the bill is so framed as to permit consideration only of the question of whether the Virginia company had received from Turner the surrender for transfer of the requisite shares as a support for the certificate in the name of the Lewis company. Concluding that it had not, it would be improper for me to proceed further with the case for the purpose of announcing what my conclusion would be if the bill sought the remedy of specific performance against Turner.

The bill seeks relief respecting something over three hundred thousand shares of stock of the Virginia company in addition to the block of one million shares. I understand no open controversy remains as to the three hundred thousand odd shares. The decree will therefore grant the relief prayed for respecting those shares to the extent agreed upon by the parties, and deny relief as to the million shares.

Decree accordingly.